JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Matthew W. Hall and Michael F. Carey

**(b)** County of Residence of First Listed Plaintiff: **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott M. Pollins, Pollins Law, 303 W. Lancaster Ave., Ste. 1C, Wayne, PA 19087, 610-896-9909

## DEFENDANTS
Abington Memorial Hospital d/b/a Abington Hospital - Jefferson Health

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Sidney R. Steinberg - FisherBroyles, LLP

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**OTHER STATUTES:** [x] 375 False Claims Act

## V. ORIGIN *(Place an "X" in One Box Only)*
[x] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
False Claims Act

Brief description of cause:
Whistleblower retaliatory termination of employment

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Unliquidated
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 6/21/22
SIGNATURE OF ATTORNEY OF RECORD: /s/

### FOR OFFICE USE ONLY
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: MHall, 1355 Lily Way, Southampton, PA 18966; MCarey, 8 Lehigh Dr., Somers Pt., NJ 08244

Address of Defendant: 1200 Old York Road, Abington, PA 19001

Place of Accident, Incident or Transaction: 1200 Old York Road, Abington, PA 19001

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? **Yes ☐  No ☑**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? **Yes ☐  No ☑**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? **Yes ☐  No ☑**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? **Yes ☐  No ☑**

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/21/2022    *Attorney-at-Law / Pro Se Plaintiff*    PA76334    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. **Federal Question Cases:**
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    *(Please specify):* False Claims Act

B. **Diversity Jurisdiction Cases:**
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Scott M. Pollins, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 06/21/2022    *Attorney-at-Law / Pro Se Plaintiff*    PA76334    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW W. HALL, : | |
| and : | CIVIL ACTION NO. |
| MICHAEL F. CAREY : | |
| Plaintiffs, : | |
| v. : | |
| ABINGTON MEMORIAL HOSPITAL,: | JURY TRIAL DEMANDED |
| d/b/a ABINGTON HOSPITAL - : | |
| JEFFERSON HEALTH : | |
| Defendant. : | |

## COMPLAINT

### I.  INTRODUCTION

1. Plaintiffs, Matthew W. Hall (Hall), and Michael F. Carey (Carey), are suing their former employer, Defendant, Abington Memorial Hospital doing business as Abington Hospital – Jefferson Health (AMH), for terminating their employment in retaliation for their blowing the whistle about patient safety issues regarding AMH's continued usage of medical equipment after it was recalled by the manufacturer due to safety issues. Hall and Carey bring legal claims under the False Claims Act (FCA), 31 U.S.C. Sections 3729 and 3730, the Pa. Whistleblower Law (PaWBL), 43 P.S. Sections 1421-1428, and for Pa. public policy wrongful discharge.

### II.  JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 31 U.S.C. § 3730(h). Furthermore, AMH's conduct with regard to Plaintiffs violated the PaWBL and Pa. public policy, and the pendant jurisdiction of this Court is invoked to remedy those violations.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b).

**III.    PARTIES**

4. Hall resides in Southampton, PA, and he is a resident of PA. Carey resides in Somers Point, NJ, and he is a resident of NJ.

5. AMH is a Pennsylvania non-profit corporation located at 1200 Old York Road, Abington, PA 19001.

6. AMH is a hospital with more than 6,000 employees.

7. AMH's 2019 Form 990 for Fiscal Year 2019 (7/1/19 – 6/30/2020) states that AMH received about $63,900,000 in government grants and contributions. This includes monies received by AMH from Medicare and Medicaid.

8. As recently as the 2018-2019 Fiscal Year, AMH was a direct beneficiary of monies from the Commonwealth of Pennsylvania for the Master Settlement Agreement with the tobacco industry.

9. AMH has received and receives funds from the sale of bonds by the Montgomery County Higher Education and Health Authority.

10. According to the December 2021 Community Based Health Care Program Annual Report for 2021, AMH received $250,000 in grants from the Pa. Dept. of Health between July 1, 2020 and June 30, 2022.

11. In about December 2016, AMH received $1,000,000 from the Commonwealth of Pennsylvania's Redevelopment Assistance Capital Program.

12. In May 2015, Jefferson University Hospitals/Thomas Jefferson University announced a 'hub and hub' merger with AMH resulting in a combined entity that receives more than $106,000,000 in public/private research funding.

13. In October 2014, AMH received a $3,000,000 grant from the Commonwealth of Pennsylvania for a new cancer center.

## IV. FACTUAL BACKGROUND

14. At all times relevant to this Complaint, Plaintiffs were employed by AMH as polysomnographers or sleep technicians at AMH's Sleep Disorders Center (Sleep Center).

15. Hall worked at AMH from October 2004 through March 31, 2022. Carey worked at AMH from 1996 through March 31, 2022.

16. Hall and Carey typically worked from about 4:30pm until about 6am.

17. Plaintiffs' direct supervisor was Scott McMaster (McMaster), Associate Director of the Neurosciences Institute.

18. In about mid-June 2021, Mr. McMaster, or one of the physicians in the Sleep Center, informed Plaintiffs that Philips Respironics, the manufacturer of the units used in the Sleep Center, had recalled its units.

19. According to the U.S. Food and Drug Administration (FDA):

> Philips Respironics (Philips) voluntarily recalled certain ventilators, bi-level positive airway pressure (also known as Bilevel PAP, BiPAP, or BPAP) machines, and continuous positive airway pressure (CPAP) machines in June 2021 due to potential health risks. The polyester-based polyurethane (PE-PUR) foam used in these medical devices to lessen sound and vibration can break down. If the foam breaks down, black pieces of foam, or certain chemicals that are not visible, could be breathed in or swallowed by the person using the device.
>
> ### *Issuance of a Notification Order*
>
> On March 10, 2022, the FDA issued a notification order under section 518(a) of the Federal Food, Drug, and Cosmetic Act [a 518(a) order] to Philips requiring the company to

notify patients and others of the company's June 14, 2021, recall and the unreasonable risk of substantial harm to the public health posed by the degradation of the PE-PUR sound abatement foam used in the recalled products because the company's notification efforts to date have been inadequate.

[FAQs on Philips Respironics Ventilator, BiPAP Machine, and CPAP Machine Recalls | FDA](). (accessed 6/20/22)

20. The Sleep Center stopped using the recalled units for about 1-2 weeks.

21. Then, in about late June/early July 2021, the Sleep Center resumed using the recalled units.

22. Immediately thereafter, both Hall and Carey repeatedly complained to McMaster that they should not be using the recalled units, and they repeatedly asked McMaster when the Sleep Center was going to replace the recalled units.

23. McMaster told Hall and Carey that it was better to treat the patients with the recalled units than not at all.

24. In July 2021, the FDA classified Philips' CPAP recall as a Class 1 recall, which meant that the unit that was recalled could cause serious injury or death if it was used after the recall.

25. On about Friday March 4, 2022, Hall and Carey met with Richard E. Friedenheim, M.D., Medical Director of the Sleep Center.

26. Hall told Dr. Friedenheim that he and Carey had been complaining to McMaster for months about how they felt uncomfortable using the recalled Philips units and they could not get a response from McMaster about when the recalled units were going to be replaced.

27. Hall asked Dr. Friedenheim if he was aware that they had been using the recalled units in the Sleep Center for months. Hall also asked if Dr. Friedenheim was aware of the class action lawsuit regarding the recalled units.

28. Dr. Friedenheim said that he was under the impression that McMaster had replaced the recalled units. Dr. Friedenheim told Hall and Carey to speak with McMaster about this.

29. After leaving their meeting with Dr. Friedenheim, Hall and Carey saw McMaster in the hallway outside Dr. Friedenheim's office. Hall and Carey told McMaster that it was unethical and immoral to put the patients' safety at risk. They asked McMaster 'what do we have to do to get working equipment, go to OSHA?'

30. Hall and Carey told McMaster that they were uncomfortable lying to the patients by falsely reassuring them that using the recalled units was okay.

31. McMaster had been directing Hall and Carey to lie to patients by falsely reassuring them that using recalled units was safe. This is a violation of 18 U.S.C. Section 1035 (false statements related to health care matters).

32. Less than a week later and on Thursday March 10, 2022, McMaster brought Hall and then Carey separately into his office and informed each of them, with two HR representatives present, that they were being suspended without pay for three reasons: 1) leaving a patient unattended (vague allegation with little specificity), 2) housekeeping was missing a cart of cleaning supplies (which Hall and Carey had used, with housekeeping's knowledge and permission, to clean the patient rooms in the Sleep Center), and 3) they had left one day at 5/5:30pm and did not return until 8pm (McMaster knew or should have known the reason Hall and Carey left that day was go to AMH's

other Sleep Center location in Warminster/North Willow Grove to look for new sleep units to use instead of the recalled units McMaster had forced them to use for the past 8 months).

33. Thereafter, over the next about two weeks, both Hall and Carey repeatedly contacted the two HR representatives (Heather Samuels and Carmen Barnes) who had been with McMaster to inquire about the status of their employment.

34. On March 31, 2022, AMH informed Hall and Carey via telephone call from Ms. Barnes, with McMaster on the phone, that they were terminated.

35. McMaster sent Hall and Carey identical termination letters informing each of them that their employment was terminated effective April 1, 2022 for their alleged violation of AMH policies.

36. Upon information and belief, on the same day AMH fired Hall and Carey, AMH replaced several of the recalled Philips units in the Sleep Center.

37. Neither Hall nor Carey had any disciplinary issues in the 15 years prior to March 31, 2022. Hall and Carey performed their job well, and they were respected by co-workers and liked by patients.

38. Upon information and belief, the Sleep Center conducted multiple sleep studies on patients every day. Each sleep study costs about $6,000 - $8,000. Many of the Sleep Center's patients had their bills for treatment paid for by Medicare or Medicaid.

39. Many of the Sleep Center's patients had their sleep studies paid for by Medicare or Medicaid even though recalled sleep units were used during their sleep studies.

40. Upon information and belief, neither Dr. Friedenheim, McMaster nor any other employee of AMH's Sleep Center reviewed with the patients whether the benefit of using the recalled sleep units outweighed the risk to the patients of using the recalled sleep units.

41. Hall and Carey complained to AMH about patient safety and compliance issues (including that AMH should not be using sleep units that were recalled by the manufacturer). These complaints dealt with gross management of a federal contract or grant, gross waste of federal funds, abuse of authority relating to a federal contract or grant, substantial and specific danger to public health or safety or violations of Medicare or Medicaid.

42. Hall and Carey made these complaints to AMH officials (Dr. Friedenheim and McMaster) who had the responsibility to ensure AMH stopped using recalled sleep units on their patients.

43. Hall's and Carey's complaints to AMH constituted complaints that AMH was engaging in conduct prohibited by the False Claims Act (FCA), 31 U.S.C. Section 3729.

44. AMH is an employer or public body within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422; *Denton v. Silver Spring Nursing & Rehabilitation Center*, 735 A.2d 571, 576 (Pa. Super 1999). AMH is a 'public body' because it is funded in any amount (including as little as $1) by **or** through Commonwealth or political subdivision authority. AMH is an 'employer' because it is a non-profit corporation that receives money from a public body to perform work or provide services.

45. Hall and Carey were employees within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422.

46. As described above, Hall and Carey are whistleblowers who made repeated good faith reports of conduct they reasonably believed constituted wrongdoing or waste within the meaning of the Pa. Whistleblower Law. 43 P.S. Section 1422.

47. Hall's and Carey's complaints of wrongdoing included AMH using recalled sleep units on their patients and McMaster directing Hall and Carey to tell patients it was safe to use recalled units in providing medical care to the patients for their sleep conditions.

48. Hall's and Carey's complaints of waste included AMH's conduct or omissions of failing to replace the recalled sleep units, which can result in patient safety being jeopardized. The substandard care provided to AMH's Sleep Center's patients caused the funding provided by federal, state and local government sources to be misused or even lost. Each patient paid approximately $6,000 - $8,000 for their treatment at AMH's Sleep Center. Many of AMH's patients had their treatment paid by Medicare or Medicaid.

49. Hall's and Carey's complaints were made pursuant to 40 P.S. Section 1303.308, which requires health care workers like Hall and Carey to report a serious event or incident if it jeopardizes patient safety.

50. AMH put profits over patients' health and safety, misused taxpayers' dollars (Medicare and Medicaid) and repeatedly ignored Hall's and Carey's complaints about AMH using recalled sleep units.

## V.     CLAIMS

### Count I – Hall v. AMH
### Pa. Whistleblower Law

51. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

52. The acts, failures to act, practices and policies of AMH set forth above constitute whistleblower discrimination/retaliation in violation of the Pa. Whistleblower Law.

53. AMH violated the Pa. Whistleblower Law by terminating Hall in retaliation for his whistleblower complaints.

54. As a direct and proximate result of AMH's illegal retaliatory conduct, Hall suffered damages, including lost compensation and benefits and emotional distress consisting of anxiety, stress, humiliation, career damage and embarrassment.

**WHEREFORE**, Hall respectfully requests this Court enter judgment in his favor and against AMH for the full amount of his damages, including lost compensation and benefits, reinstatement of employment, interest, actual damages for emotional and mental stress, anxiety, embarrassment and humiliation, negative tax consequence damages, career damage, attorney's fees and expenses, and such other relief as the Court deems proper.

### Count II – Carey v. AMH
### Pa. Whistleblower Law

55. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

56. The acts, failures to act, practices and policies of AMH set forth above constitute whistleblower discrimination/retaliation in violation of the Pa. Whistleblower Law.

57. AMH violated the Pa. Whistleblower Law by terminating Carey in retaliation for his whistleblower complaints.

58. As a direct and proximate result of AMH's illegal retaliatory conduct, Carey suffered damages, including lost compensation and benefits and emotional distress consisting of anxiety, stress, humiliation, career damage and embarrassment.

**WHEREFORE**, Carey respectfully requests this Court enter judgment in his favor and against AMH for the full amount of his damages, including lost compensation and benefits, reinstatement of employment, interest, actual damages for emotional and mental stress, anxiety, embarrassment and humiliation, negative tax consequence damages, career damage, attorney's fees and expenses, and such other relief as the Court deems proper.

### Count III – Hall v. AMH
### FCA

59. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

60. The acts, failures to act, practices and policies of AMH set forth above constitute whistleblower discrimination/retaliation in violation of the FCA.

61. AMH violated the FCA by terminating Hall in retaliation for his whistleblower complaints.

62. As a direct and proximate result of AMH's illegal retaliatory conduct, Hall has suffered damages.

**WHEREFORE**, Hall respectfully requests this Court enter judgment in his favor and against AMH for the full amount of his damages, including two times his past or back lost compensation and benefits, reinstatement of employment or future or front lost compensation and benefits, special damages for emotional and mental stress, anxiety, embarrassment, humiliation and career damage, negative tax consequence damages,

interest, attorney's fees and expenses, and such other relief as the Court deems proper pursuant to 37 U.S.C. Section 3730(h).

### Count IV – Carey v. AMH
### FCA

63. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

64. The acts, failures to act, practices and policies of AMH set forth above constitute whistleblower discrimination/retaliation in violation of the FCA.

65. AMH violated the FCA by terminating Carey in retaliation for his whistleblower complaints.

66. As a direct and proximate result of AMH's illegal retaliatory conduct, Carey has suffered damages.

**WHEREFORE**, Carey respectfully requests this Court enter judgment in his favor and against AMH for the full amount of his damages, including two times his past or back lost compensation and benefits, reinstatement of employment or future or front lost compensation and benefits, special damages for emotional and mental stress, anxiety, embarrassment, humiliation and career damage, negative tax consequence damages, interest, attorney's fees and expenses, and such other relief as the Court deems proper pursuant to 37 U.S.C. Section 3730(h).

### Count V – Hall v. AMH
### Public Policy Wrongful Discharge

67. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

68. AMH's termination of Hall is a violation of public policy as reflected in 28 Pa. Code Section 119.12 (physical facilities of outpatient services shall be safe and functional), 28 Pa. Code Section 5.31 (sufficient medical equipment in good condition

11

and working order should be used), and 40 P.S. Section 1303.308 (requires health care workers to report a serious event or incident if it jeopardizes patient safety). Additionally, it is a violation of public policy for AMH to have forced Hall to work with his patients using unsafe and recalled sleep units and for AMH to deceive its patients into believing that the Sleep Unit was using safe sleep units that had not been recalled by the manufacturer.

69. As a direct and proximate result of AMH's illegal conduct, Hall has suffered damages.

**WHEREFORE**, Hall respectfully requests this Court enter judgment in his favor and against AMH for back pay, front pay, compensatory and punitive damages, lost benefits, and such other relief as the Court shall deem proper.

## Count VI – Carey v. AMH
## Public Policy Wrongful Discharge

70. Paragraphs 1-50 are incorporated by reference as if fully set forth herein.

71. AMH's termination of Carey is a violation of public policy as reflected in 28 Pa. Code Section 119.12 (physical facilities of outpatient services shall be safe and functional), 28 Pa. Code Section 5.31 (sufficient medical equipment in good condition and working order should be used), and 40 P.S. Section 1303.308 (requires health care workers to report a serious event or incident if it jeopardizes patient safety). Additionally, it is a violation of public policy for AMH to have forced Carey to work with his patients using unsafe and recalled sleep units and for AMH to deceive its patients into believing that the Sleep Unit was using safe sleep units that had not been recalled by the manufacturer.

72. As a direct and proximate result of AMH's illegal conduct, Carey has suffered damages.

**WHEREFORE**, Carey respectfully requests this Court enter judgment in his favor and against AMH for back pay, front pay, compensatory and punitive damages, lost benefits, and such other relief as the Court shall deem proper.

        Respectfully submitted,

By:   /s/ Scott M. Pollins
Scott M. Pollins/ Pa. Atty. Id. No. 76334
**Pollins Law**
303 W. Lancaster Ave., Ste. 1C
Wayne, PA 19087
(610) 896-9909 (phone)/(610) 896-9910 (fax)
scott@pollinslaw.com (email)

Date:   6/21/22    Attorney for Plaintiffs, Mathew W. Hall and Michael F. Carey