## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW W. HALL and MICHAEL F. CAREY, | : |
| | : |
| *Plaintiffs,* | : |
| | : |
| v. | : **CIVIL NO.  22-2429** |
| | : |
| ABINGTON MEMORIAL HOSPITAL, d/b/a ABINGTON HOSPITAL-JEFFERSON HEALTH, | : |
| *Defendant.* | : |
| | : |
| | : |
| | : |
| | : |

**Scott, J.**                                                                                    **March 10, 2025**

### MEMORANDUM

Plaintiffs Matthew Hall and Michael Carey, sleep technicians who, collectively, worked at Abington Memorial Hospital for over 40 years, allege that Defendant Abington Memorial Hospital, d/b/a Abington Hospital-Jefferson Health (Abington), fired them in retaliation for their efforts to dissuade Abington's Sleep Disorders Center from using certain recalled sleep machines without obtaining patients' informed consent to do so. Plaintiffs allege that these retaliatory firings violate the antiretaliation provision of the False Claims Act (FCA), 31 U.S.C. § 3730(h), the

1

Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-28, and Pennsylvania common law's public policy against wrongful discharge. Because Plaintiffs' Amended Complaint (ECF No. 28) does not plead sufficient facts to state a claim for relief under the False Claims Act (FCA), the Court grants Defendant's 12(b)(6) motion to dismiss (ECF No. 30) with prejudice. Plaintiffs' FCA retaliation claims are their sole federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## I.   BACKGROUND

On September 25, 2023, the Court dismissed Plaintiffs' Complaint without prejudice. ECF No. 27. On October 13, 2023, Plaintiffs filed an Amended Complaint, which Defendant moved to dismiss for failure to state a claim for relief on October 27, 2023. ECF Nos. 28, 30. Plaintiffs filed their Response in Opposition on November 17, 2023, and Defendant filed its Reply on December 01, 2023. ECF Nos. 33, 34. The Court assumes familiarity with the factual background as described in its previous order granting Defendant's Motion to Dismiss. *See* ECF No. 26 at 2-3. The Court, however, briefly addresses additional factual material as relevant to the Amended Complaint.

Plaintiffs allege that they repeatedly complained to Abington about replacing or repairing sleep machines that Phillips (the manufacturer of said machines) voluntarily recalled. ECF No. 28 ¶¶ 22. Some of these complaints expressed concern that Abington was "not having the individual patient discussions" necessary to obtain patients' informed consent to use the manufacturer-recalled sleep machine units. *Id.* ¶ 28. Moreover, Plaintiffs allege that Abington directed them to "falsely reassur[e] [patients] that using recalled units was safe" and that they felt uncomfortable doing so. *Id.* ¶¶ 36-37. Plaintiffs further allege that they voiced these concerns to the Medical Director of the Sleep Disorders Center at Abington Memorial Hospital on March 4, 2022 and to

2

the Associate Director of the Neurosciences Institute (who was their direct supervisor) several times, including on March 4, 2022 as well. *Id.* ¶¶ 32-36. By March 10, 2022, Abington had suspended both Hall and Carey without pay, citing job performance and misconduct. *Id.* ¶ 38. On March 31, 2022, Abington fired both Plaintiffs. *Id.* ¶ 40.

## II.   LEGAL STANDARD

Courts in the Third Circuit employ a three-step framework to evaluate a 12(b)(6) motion to dismiss. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the Court articulates the elements of the claim. *Id.* Second, the Court reviews the complaint but disregards any "formulaic recitation of the elements of a . . . claim or other legal conclusion" and any allegations that "are so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 327-28 (internal quotation marks omitted). Third, the Court evaluates the plausibility of the remaining allegations while assuming the truth of the well-pleaded allegations, construing them in the light most favorable to plaintiffs, and drawing all reasonable inferences in plaintiffs' favor. *Id.* at 328. If the remaining allegations contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), then the complaint survives the motion to dismiss. Although the plausibility standard does not demand a showing of a probability of relief, it must raise "more than a sheer possibility that a defendant has acted unlawfully," *id.* at 678, or furnish "a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." *Lutz*, 49 F. 4th at 328 (internal quotation marks omitted).

## III.   DISCUSSION

The antiretaliation provision of the FCA provides in pertinent part that:

Any employee shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other

manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

To state a retaliation claim under the FCA whistleblower provision, Plaintiffs must establish that (1) they "engaged in protected conduct," and (2) they were "discriminated against because of [their] protected conduct." *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 194 (3d Cir. 2022); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018). As a threshold matter, individuals are engaged in protected conduct when the activity for which they suffered retaliation involves a violation of the False Claims Act. *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 508 (3d Cir. 2017); *Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 108 (3d Cir. 2002) (also collecting cases). Indeed, far from being a panacea to cure all legal maladies, the FCA's ambit extends only to claims that are, *inter alia*, false and material to the government's payment decision in the relevant statutory senses. *Universal Health Services, Inc. v. Unites States et al. ex rel. Escobar*, 579 U.S. 176, 194 (2016) (observing that the FCA is not an "all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations") (internal quotation marks and citation omitted); *id.* at 196 ("We emphasize, however, that the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations").

The central issue here is whether Abington's failure to obtain the informed consent of patients regarding the use of recalled sleep machines—the truth of which the Court assumes for purposes of this motion—is a proper claim within the meaning of the FCA. This Court holds that, under the facts alleged, it is not for two independent reasons.

4

A. Falsity under the FCA

To state an FCA claim, one must show four elements: "falsity, causation, knowledge, and materiality." *Petratos*, 855 F.3d at 487. Falsity for FCA purposes may appear in two forms: legal falsities—such as filing a claim for services to which the claimant was not legally entitled—and factual falsities—such as filing a claim for services that were never actually performed for patients. *See United States ex rel. Wilkins v. United Health Grp., Inc.,* 659 F.3d 295, 305 (3d Cir. 2011). Although Plaintiffs state that Abington submitted claims that were both factually false and legally false, ECF No. 33 at 11, it is clear from the Amended Complaint and the motion papers that Plaintiffs endorse primarily, if not solely, a theory of legal falsity. (The Court has not identified a single instance where Plaintiffs allege that Abington submitted claims for sleep studies that were never performed such that Abington's claims for government payment would be *factually* false.)

Plaintiffs allege that Abington failed to obtain informed consent from its patients regarding the use of recalled sleep machine devices. By so failing, Abington's claims for payment submitted to Medicare were necessarily predicated on a false certification that the services provided by the claimant were necessary. This necessity follows, on Plaintiffs' view, from the inference that, under 42 CFR § 424.10(a), no service can be necessary when patients do not provide informed consent. ECF No. 28 ¶ 49. Moreover, Plaintiffs suggest, relying largely on *United States ex rel. Wollman v. General Hosp. Corp.*, 394 F.Supp.3d 174 (D. Mass. 2019), that Abington violated a Medicare condition of participation by failing to obtain patients' informed consent and that this violation rendered Abington ineligible to submit claims and to receive payments on those claims. ECF No. 33 at 11-13.

One problem with this theory under the facts alleged is that it does not articulate the type of falsity with which the FCA is primarily concerned. Put simply, the presence or adequacy of

informed consent sounds more in medical malpractice than it does in the FCA. Plaintiffs cite no
caselaw to support the proposition that healthcare providers who submit claims for government
payment violate the FCA when they fail to obtain informed consent. Nor has this Court found any
such cases. Indeed, among the courts that have encountered kindred issues, most have reached the
same conclusion as this Court. *See, e.g.*, *United States ex rel. Stebbins v. Vascular Access Ctrs.,
LLC*, 2024 WL 3069902, at \*7 (W.D. Pa. June 20, 2024) (observing that "Relator's False Claims
Act allegation, concerning lack of informed consent, fails to state any claim under the Act.");
*United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, 2017 WL 5450757, at \*11 (M.D. Pa. Nov.
14, 2017) ("[T]hese [Informed Consent] allegations reflect, at most, a difference of opinion
between Lord and the anesthesiologists involved about what constitutes informed consent under
the circumstances, which does not constitute a false claim under the FCA.") (internal quotation
marks and citation omitted).

Plaintiffs' reliance on *Wollman* fails to persuade.    In *Wollman*, the District of
Massachusetts Court denied a motion to dismiss where Plaintiffs alleged that the defendants—a
hospital and a group of physicians—violated the FCA by, *inter alia*, (i) performing overlapping
surgeries concurrently and billing Medicare and Medicaid for both surgeries, (ii) administering
anesthesia to patients for an unreasonably long period of time because of the concurrent and
overlapping scheduling of surgeries, (iii) obscuring these dangerous double-booking practices
through shoddy recordkeeping, and (iv) failing to obtain patients' informed consent regarding the
scheduling of concurrent and overlapping surgeries. *Wollman*, 394 F. Supp. 3d at 183-84.
Throughout its opinion, the *Wollman* court explains that it did not look at the informed consent
allegations individually but rather alongside a host of other fraudulent conduct alleged by the
plaintiff. *See, e.g., id.* at 183. Here, by contrast, Plaintiffs rely primarily on the lack of informed

6

consent as the sole basis to find an FCA violation. For this reason, *Wollman* is inapposite as support for the proposition that an informed consent violation, by itself, can form the basis of an FCA claim. And any reliance on *Wollman* for such purpose fails to carry the day.

Because, under the facts alleged, there is no basis to conclude that Plaintiffs' informed consent theory states a claim under the FCA and therefore no basis to conclude that Plaintiffs were engaged in protected conduct, Plaintiffs' claims may be dismissed on this ground.

B. Materiality under the FCA

In addition to Plaintiffs' problems with FCA falsity, Plaintiffs face an equally high hurdle under the FCA's "demanding" materiality requirement. *Escobar*, 579 U.S. at 194. "A materiality inquiry under the FCA is a holistic, totality-of-the-circumstances examination of whether the false statement has a 'natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *United States ex rel. International Brotherhood of Electrical Workers Union No. 98 v. Farfield Co.*, 5 F.4th 315, 342 (3d Cir. 2021) (citation omitted and also identifying as relevant factors for the materiality inquiry (i) the statutory classification of a provision, (ii) whether noncompliance with the provision is minor or insubstantial, and (iii) whether the Government consistently refuses to pay claims based on noncompliance with the particular provision). Materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Escobar*, 579 U.S. at 193. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* at 194.

7

The Court finds that Plaintiffs' Amended Complaint does not adequately plead materiality. In their briefing, Plaintiffs argue without citation to the Amended Complaint that "the facts plausibly infer that [Abington] knowingly violated requirements [Abington] knows are material to the government's payment decisions." ECF No. 33 at 11. Assuming that Abington did fail to obtain patients' informed consent (as we must assume at this stage) and that such failure violates a Medicare statute, this Court finds no statutory basis and no caselaw to support finding that such a failure would have been material to the government's payment decisions.

First, the statutory classification for informed consent under Medicare is as a condition of participation, not a condition of payment. *Compare* 42 C.F.R. Part 424 (Conditions for Medicare Payment) *with* 42 C.F.R. Part 482 (Conditions of Participation for Hospitals) and 42 C.F.R. § 482.13 (Condition of Participation: Patient's Rights, which includes the informed consent provisions at issue). Although "not automatically dispositive," *Escobar*, 579 U.S. at 194, this statutory classification strongly suggests that the presence or absence of informed consent is not material to whether the government will pay Medicare claims.

Second, compliance with the informed consent provisions is not the "very essence of the bargain" between Abington and Medicare. *Farfield*, 5 F.4th at 315 (citing *Escobar*, 579 U.S. at 193 n.5). As Plaintiffs themselves indirectly acknowledge, the bargain here is payment from Medicare in exchange "for the medical services [Abington] provides its patients." ECF No. 28 ¶ 50. Moreover, Plaintiffs allege no facts and cite to no legal support to permit this Court to conclude that noncompliance with the informed consent provisions would cause the government to reject payment. *See United States ex rel. Zaldonis v. Univ. of Pittsburg Med. Ctr.*, 2021 WL 1946661, at *6 (W.D. Pa. May 14, 2021) ("While this Court agrees with Ms. Zaldonis that informed consent is an important part of medical care, we are not convinced that she has met her

burden to show that the [lack of informed consent] . . . would cause the government to deny payment.").

Third, there are no well-pled allegations that substantiate relevant government action (or inaction) here. Plaintiffs have alleged zero facts in the Amended Complaint and cited zero caselaw that suggest the government has ever refused to pay claims based solely on noncompliance with Medicare's informed consent provisions. Plaintiffs do imply that had the government known Abington violated the Medicare provision, they may have refused payment. *See, e.g.*, ECF No. 28 ¶ 30 (characterizing Abington's claims as "not subject to payment by Medicare"); ECF No. 33 at 11. But the Court cannot accept this argument because it is precisely the type of post-hoc rationalization disallowed by the Supreme Court. *Escobar*, 579 U.S. at 194 ("Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance."); *accord Stebbins*, 2024 WL 3069902, at *9.

Against this backdrop, the Court finds that the materiality factors are, at best, neutral and, at worst, against Plaintiffs. Because Plaintiffs have not sufficiently pled materiality to state an FCA claim and therefore have not sufficiently pled that they were engaged in protected conduct under the FCA whistleblower provision, Plaintiffs' claims are dismissed on this independent ground as well.

IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Amended Complaint is dismissed with prejudice and Defendant's Motion (ECF No. 30) is **GRANTED**.

An appropriate Order will be entered.

9

BY THE COURT:

**HON. KAI N. SCOTT**
**United States District Court Judge**